**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FREEPLAY MUSIC, LLC,

     Plaintiff,

 v.

GIBSON BRANDS, INC. (f/k/a GIBSON
GUITAR CORP.)

     Defendant.

---

Civil Action No.:  1:16-cv-01457-VM

**ANSWER TO COMPLAINT WITH**
**COUNTERCLAIMS**

---

## ANSWER

     Defendant Gibson Brands, Inc. ("Gibson" or "Defendant"), through its attorneys,

Bates & Bates, LLC, for its Answer to the Complaint of Freeplay Music, LLC

("Freeplay" or "Plaintiff"), dated February 25, 2016, hereby states as follows:

     1.    Gibson denies the allegations contained in paragraph 1 of the Complaint

and specifically denies any wrongdoing or unlawful conduct on its part.

     2.    Gibson is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained in paragraph 2 of the Complaint, and

therefore denies the same and demands strict proof.

     3.    Gibson admits the allegations contained in paragraph 3 of the Complaint.

     4.    Gibson neither admits nor denies the allegations contained in paragraph 4

of the Complaint, as said allegations amount to a legal conclusion.

     5.    Gibson denies the allegations contained in paragraph 5 of the Complaint

and believes the proper venue is in the Federal Courts located in Tennessee or California.

6.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2 of the Complaint, and therefore denies the same and demands strict proof.

7.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of the Complaint, and therefore denies the same and demands strict proof.

8.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of the Complaint, and therefore denies the same and demands strict proof.

9.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9 of the Complaint, and therefore denies the same and demands strict proof.

10.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 10 of the Complaint, and therefore denies the same and demands strict proof.

11.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 11 of the Complaint, and therefore denies the same and demands strict proof.

12.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 12 of the Complaint, and therefore denies the same and demands strict proof.

13.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 13 of the Complaint, and therefore denies the same and demands strict proof.

14.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 14 of the Complaint, and therefore denies the same and demands strict proof.

15.     Gibson admits the allegations contained in paragraph 15 of the Complaint however they are incomplete as Gibson is also a manufacturer and distrbutor of electronics.

16.     Gibson admits that it publishes videos on YouTube however denies that "these videos" where published, further its unclear what is meant by "these videos" in paragraph 16.

17.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 17 of the Complaint, and therefore denies the same and demands strict proof.

18.     Gibson denies the allegations contained in paragraph 18 of the Complaint.

19.     Gibson denies the allegations contained in paragraph 19 of the Complaint.

20.     Gibson denies the allegations contained in paragraph 20 of the Complaint.

21.     Gibson denies the allegations contained in paragraph 21 of the Complaint.

22.     Gibson denies the allegations contained in paragraph 22 of the Complaint.

23.     Gibson admits it was contacted by TuneSat, LLC, purporting to act on Freeplay's behalf, with baseless threats of alleged copyright infringement along with demands for payments.  Gibson is without knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations contained in paragraph 23 of the Complaint, and therefore denies the same and demands strict proof.

24.     In response to paragraph 24, Gibson repeats and re-alleges each of its responses to paragraphs 1 through 23 as if fully set forth herein.

25.     Gibson neither admits nor denies the allegations contained in paragraph 25 of the Complaint, as said allegations amount to a legal conclusion.

26.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 26 of the Complaint, and therefore denies the same and demands strict proof.

27.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 27 of the Complaint, and therefore denies the same and demands strict proof.

28.     Gibson is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 28 of the Complaint, and therefore denies the same and demands strict proof.

29.     Gibson denies the allegations contained in paragraph 29 of the Complaint.

30.     Gibson denies the allegations contained in paragraph 30 of the Complaint.

31.     Gibson denies the allegations contained in paragraph 31 of the Complaint.

32.     Gibson denies the allegations contained in paragraph 32 of the Complaint.

33.     Gibson denies the allegations contained in paragraph 33 of the Complaint.

## <u>DEFENSES</u>

Gibson states the following defenses without assuming the burden of proof on such defenses that would otherwise rest with Freeplay, and without prejudice to Gibson's right to assert any and all other defenses revealed during the course of discovery.

<u>First Defense</u>

1.      The Complaint fails to state a claim upon which relief may be granted.

<u>Second Defense</u>

2.      Freeplay's claim is barred, in whole or in part, because Freeplay does not own the copyrights to the allegedly infringed works.

<u>Third Defense</u>

3.      The Court lacks subject matter jurisdiction over Freeplay's claim because Freeplay lacks standing to assert its claim.

<u>Fourth Defense</u>

4.      Freeplay's claim is barred, in whole or in part, to the extent Freeplay has failed to properly or timely register its purported works with the United States Copyright Office.

<u>Fifth Defense</u>

5.      Freeplay's claim is barred, in whole or in part, because the allegedly copied works are not original to Freeplay and/or do not constitute copyrightable matter.

<u>Sixth Defense</u>

6.      Freeplay's claim is barred, in whole or in part, because Freeplay's purported copyrights are invalid and/or unenforceable.

<u>Seventh Defense</u>

7.      Freeplay's claim is barred, in whole or in part, by the doctrine of misuse of copyright.

<u>Eighth Defense</u>

8.      Freeplay's claim is barred, in whole or in part, by the doctrine of unclean hands.

<u>Ninth Defense</u>

9.      Freeplay's claim is barred, in whole or in part, by the statutory immunity granted under 17 U.S.C. § 512.

<u>Tenth Defense</u>

10.     Freeplay's claim is barred, in whole or in part, because any of the allegedly infringed works was *de minimis*.

<u>Eleventh Defense</u>

11.     Freeplay's claim is barred, in whole or in part, by the doctrine of fair use.

<u>Twelfth Defense</u>

12.     Freeplay's claim is barred, in whole or in part, by Freeplay's license, consent, and/or acquiescence to the alleged use of Freeplay's purported copyrights.

<u>Thirteenth Defense</u>

13.     Freeplay's claim is barred, in whole or in part, by the doctrines or waiver, estoppel, and/or ratification.

<u>Fourteenth Defense</u>

14.     Freeplay's claim is barred, in whole or in part, by the statute of limitations.

<u>Fifteenth Defense</u>

15.     Freeplay's claim is barred, in whole or in part, by the doctrine of laches.

<u>Sixteenth Defense</u>

16.     Freeplay's claim for damages is barred, in whole or in part, due to Freeplay's failure to mitigate damages.

<u>Seventeenth Defense</u>

17.     Freeplay's claim for direct infringement is barred, in whole or in part, because the alleged primary infringements were not caused by any volitional conduct by Defendant are are not otherwise attributable to Defendant.

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff, Gibson Brands, Inc. ("Gibson"), as and for its counterclaims against Plaintiff/Counterclaim-Defendant Freeplay, alleges as follows:

### NATURE OF THE ACTION

1.     This action arises from years of false and deceptive advertising by Freeplay to lure unsuspecting users into believing that the music offered on its website is "free."  Beginning with its very name – "Freeplay" – its business model is premised on enticing consumers to download what is prominently advertised to the public to be "free" music, and then threatening, and commencing, copyright strike suits in an attempt to extort vast amounts of money after the consumer actually uses the music.  Since its inception in 2001, Freeplay has asserted copyright infringement claims in more than *two dozen* lawsuits, extracting settlements in these litigations and, upon information and belief, in an untold number of other instances where the simple threat of litigation was

enough to extract a shake down from unsuspecting consumers who mistakenly thought they were getting exactly what Freeplay advertises – music that was "free" to use.

2.      In the last several years, Freeplay has aggressively taken its deceptive practices to YouTube, a platform used by tens, if not hundreds, of millions of users across the country and around the world to upload videos.  When a consumer looking for music to incorporate into a YouTube video searches Google with the term "free music," one of the top three search results is Freeplay's website, www.freeplaymusic.com.  A user who clicks through to Freeplay's website then sees the following offer, displayed front and center on Freeplay's homepage:



Freeplay's entire copyright infringement claim is premised on the falsity of this promise of "free music for YouTube."

3.      Only buried deep within Freeplay's Web domain does Freeplay purport to disclose that this music is, in fact, not "free."  That disclosure is made in "Terms of Use" that a typical user would never see, nor is ever required to see, at *any* point in the course of downloading Freeplay's music.  Most of Freeplay's victims learn that Freeplay's promise of "free music for YouTube" is supposedly false only when Freeplay sends a demand payment, often demanding $150,000 in statutory damages, for *each* downloaded

song, based on the outrageous notion that the user's unwitting "copyright infringement was "willful."

4.      Freeplay's false advertising has harmed an untold number of consumers who innocently use Freeplay's "free" music in creating their YouTube videos, only to have these videos taken down when Freeplay issues a copyright takedown notice to YouTube and who are, in many cases, the victims of Freeplay's exorbitant settlement demands.  Its false and deceptive advertising has also harmed businesses operating on YouTube, such as Counterclaim-Plaintiff, whose employees are among those who have been deceived by Freeplay's deceptive practices.  Perhaps most significantly in this action, it has forced Counterclaim-Plaintiff, as well as numerous other businesses, to expend costly legal fees and use limited judicial resources, based on copyright "infringement" that is a direct and deliberate result of Freeplay's own false and deceptive advertising.

**JURISDICTION AND VENUE**

5.      Subject to and without waiving  Counter-Plaintiff's Motion to Transfer Venue , this action arises under section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a) and N.Y. Gen. Bus. Law §§ 349 and 350.

6.      Subject to and without waiving  Counter-Plaintiff's Motion to Transfer Venue, the Court has subject matter jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the claims arising under state statutory law pursuant to 28 U.S.C. §§ 1338(b) and 1367.

7.      Subject to and without waiving  Counter-Plaintiff's Motion to Transfer Venue of which Counter-Plaintiff believes that proper venue is in California or Tennessee, if this Court believes that venue should remain in New York, venue is proper in this District under 28 U.S.C. § 1391 otherwise its proper in the forgoing Districts of Tennessee or California under 28 U.S.C. § 1391.

8.      Subject to and without waiving  Counter-Plaintiff's Motion to Transfer Venue, the Court has personal jurisdiction over Freeplay because, among other things, Freeplay does business in New York and has waived any objections to personal jurisdiction by having commenced this action in this District.

## THE PARTIES

9.      Gibson is a Delaware corporation, with a principal place of business in Nashville, Tennessee.

10.     Upon information and belief, Freeplay is a Delaware limited liability company, with a principal place of business in New York, New York.

## FREEPLAY'S FALSE AND MISLEADING OFFER OF "FREE MUSIC"

11.     The counterclaims herein seek redress from Freeplay's deliberate and unlawful false and misleading representations that its music is "free" to use on YouTube videos.

12.     A typical user searching for free music on the Internet might run a Google search for "free music," which returns the following results:



13.      As shown above, Freeplay is the third result shown in a Google search for "free music."  Upon information and belief, all of the other sites shown above do, in fact, provide free music.  Not surprisingly, anyone searching the Internet for "free music" would assume that Freeplay's music is also free.

14.      Upon information and belief, to further its fraudelent scheme, Freeplay, through the use of misleading metadata, the expenditure of advertising costs, and costs devoted to Search Engine Optimization (SEO) has unfairly caused its website to appear at or near the top of website lists when individuals search the term "free music" in internet search engines.

15.     This free music assumption is further reinforced when a consumer then proceeds to Freeplay's website (www.freeplaymusic.com), which prominently proclaims "**FREE MUSIC** FOR YOUTUBE":



16.     Consumers who are lured by Freeplay's representations of "free" music for their YouTube videos have the oportunity to browse Freeplay's catalog on its website.

17.     After browsing Freeplay's catalog and listening to samples, the user has the option to select "Add to Cart" with respect to any song.  Upon checkout, the user is prompted to select from a dropdown menu of license options.  Two of these options, shown below, are "YouTube: Personal use on YouTube only" and "Internet: Personal Use (YouTube only)."

18.     The cost of both of these categories of licenses is zero, as shown in the images above.

19.     Whichever option the consumer selects, a popup window appears for a "Master Recording / Synchronization License" (the "License").  Section 4 of the License sets forth the permitted uses as follows:

- If the consumer selects the option for "YouTube: Personal use on YouTube only," the License permits "YouTube Personal use on YouTube only."

- If the consumer selects the option for "Internet: Personal Use (YouTube only)," the License permits "Internet Personal Use (Youtube only)."

20.     In either case, "personal use" on YouTube is expressly permitted.  For both options, the License gives the consumer no indication that an individual's use of a song on YouTube is anything other than a permitted "personal use."  Indeed, "personal use" is not defined anywhere in the License.  The License does not incorporate any other terms by reference, nor does it offer a link to any other terms extraneous to the License.

21.     After the License is shown, all the user has to do to download the music and obtain the "free" license is to enter an email address and click his or her acceptance of the License.  The license and download transaction takes place directly on Freeplay's website, which, upon information and belief, is maintained and operated in the United States and may be from Freeplay's place of business in New York but used on YouTube which is located in California and whose information is housed on servers located in Tennessee.

22.     Upon information and belief, the music purchase, download, and licensing scheme described above was not in effect during the times relevant to this suit.  Upon

information and belief, Freeplay only began to use said licensing scheme in or around July 2013.

23.     Upon information and belief, at all times relevant to this suit, i.e., prior to July 2013, a visitor to Freeplay's website, such as Defendant, could download music files from the website with one simple click of a computer mouse.

24.     Upon information and belief, at all relevant times, no shopping cart or other payement feature was used to collect payment from a website visitor in order to download music made available on Freeplay's website.

25.     Upon information and belief, at all relevant times, payment of any kind was not a condition to downloading music available on Freeplay's website.

26.     Upon information and belief, at all relevant times, in order to download music files, a visitor to Freeplay's website did not need to input any personal information, such as contact or billing information.

27.     Upon information and belief, at all relevant times, no conditions needed to be accepted in order for a visitor to download music from Freeplay's website.

28.     For example, a visitor's review and acceptance of Freeplay's purported terms and conditions was not required to download music.

29.     Using its website as a tool to intentionally decieve the public, upon information and belief, Freeplay made several affirmative misrepresentations designed to lure unsuspecting website visitors, such as Defendant, into believing that all music downloaded from Freeplay's website was, in fact, free to download and use.

30.     Upon information and belief, Freeplay's misrepresentations included, but were not limited to, the following:

14

a. Under the heading: "how can I obtain freeplay music library?," Freeplay stated as follows on its website: "Individual mp3 or AAC files can be downloaded directly from our website, via key word search, genre, or just by searching or browsing CD Volumes.  <u>Downloads and Previews are free</u>." (emphasis added).

b. Under the heading: "Why is Freeplay Music different than other production music libraries?," Freeplay explained on its website that while "typically end users wanting the type of quality music represented in the Freeplay catalog would pay fees to the content owners and libraries known as synchronization or needledrops," Freeplay offered visitors "use and access to its content <u>free of any synchronization, needledrop or other upfront license fees</u>."  (emphasis added).

c. Under the question: "Does this include programming and advertising that I produce for international distribution?," Freeplay stated on its website as follows: "Absolutely.  You're free to include Freeplay music in programming or advertising for distribution anywhere in the world."

d. Freeplay claimed on its website that its "innovative patent-pending business model <u>eliminate[d] the need for the licensing agreements and fees</u> normally associated with music of [the quality available on its website]." (emphasis added).

31.    Upon information and belief, all of the above misrepresentations were made by Freeplay and were contained on its website as of the date music was

downloaded from Freeplay's website, which music was included in the allegedly infringing videos referenced in Freeplay's Complaint.

32.     Upon information and belief, Freeplay's website and License terms have changed since its inception.  Upon information and belief, at all relevant times, Freeplay has falsely, deceptively, and misleadingly represented that its music was "free" to use under the circumstances at issue in this action.

33.     In an attempt to capitalize on its fraudulent business model, Freeplay has asserted baseless copyright infringement claims in dozens of lawsuits and, upon information and belief, in countless other instances where Freeplay's targets were forced to settle rather than defend themselves in costly litigation.

34.     Freeplay has brazenly misrepresented to consumers that it offers "**FREE MUSIC** FOR YOUTUBE,"  without the requisite "clear and conspicious" disclosure of the conditions that purportedly must be met for the offer of "free music" to apply.

35.     Counterclaim-Plaintiff has been decieved and misled by Freeplay's false and misleading advertising and representations, including the employee who created the allegedly infringing YouTube videos that are at issue in this action.  Upon information and belief, many other consumers not associated with Counterclaim-Plaintiff have also been misled by Freeplay's offer of "free" music.

### FREEPLAY'S FALSE ADVERTISING HAS HARMED GIBSON AND THE PUBLIC

36.     The natural and proximate – and, indeed, deliberate – consequence of Freeplay's misconduct has been the very copyright "infringements" by which Freeplay purports to have been injured.  In reality, Freeplay seeks to earn a windfall from these "infringements" through exorbitant settlement and litigation demands.

37.     This action is just one of the over *two dozen* in which Freeplay has asserted copyright infringement claims over the last several years.  Upon information and belief, most, if not all, of these litigations resulted in monetary settlements for Freeplay that exceeded what it could or would have earned in license fees, had the purported terms of usage been properly disclosed on its website.

38.     Upon information and belief, Freeplay has sent demand letters to other individuals and entities it never sued, and who entered into monetary settlements with Freeplay precisely to avoid the costly litigation that Freeplay threatened, but that its victims could not afford to defend.

39.     Upon information and belief, Freeplay routinely demands payment of $150,000 per work in its settlement demands and in litigation pleadings – as it does in the instant action – even though the purported "infringements" were caused by its own false and deceptive advertising, and even though the cost to license those works from Freeplay for "business use" ($250 per work) is orders of magnitude less than the amount of its unconscionable demands.

40.     As a direct result of Freeplay's false and deceptive representations and advertisements, Counterclaim-Plaintiff, as well as other victims of Freeplay's practices, have been forced to expend costly legal fees to defend against Freeplay's predatory litigation efforts, all arising from the very "infringements" Freeplay has deliberately induced through its false, deceptive and misleading advertisements and representations.

41.     Freeplay's conduct has also caused reputational injury by falsely casting Gibson as a copyright infringer.

42.     Unless Freeplay's predatory business model and practices are put to a halt, Gibson and members of the public will continue to be harmed, as YouTube users continue to download and use what they believe to be exactly what Freeplay advertises – "**FREE MUSIC** FOR YOUTUBE."

## COUNT I
## (FEDERAL FALSE ADVERTISING)

43.     Counterclaim-Plaintiff repeats and realleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

44.     Freeplay has made false, deceptive, and misleading descriptions and representations of fact in its commercial advertising concerning the nature, characteristics, and qualities of its goods, services, and commercial activites, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

45.     Freeplay's false, deceptive, and misleading descriptions and representations that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," have deceived and are likely to deceive purchasers and consumers.

46.     Freeplay's false, deceptive, and misleading advertising has damaged Gibson commercial interests by, among other things, depriving Gibson of advertising revenue and sales.

47.     Freeplay's false, deceptive, and misleading advertising has caused, and will continue to cause, irreparable injury to Counterclaim-Plaintiff's goodwill, reputation, and viewship, for which there is no adequate remedy at law.  Pursuant to 15 U.S.C. § 1116, Gibson is entitled to an injunction restraning Freeplay, its agents, employees,

representatives and all persons acting in concert with it form engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

48.     Pursuant to 15 U.S.C. § 1117, Gibson is entitled to recover the damages sustained as a result of Freeplay's acts in violation of the Lanham Act § 43(a), in an amount to be proven at trial.

49.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Freeplay the profits that it has obtained as a result of its false, deceptive, and misleading advertising.

50.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Pursuant to 15 U.S.C. § 1117, Gibson is thus entitled to recover additional damages, profits and reasonable attorneys' fees.

## COUNT II
## (VIOLATION OF N.Y. GEN. BUS. LAW § 349)

51.     Subject to and without waiving  Counterclaim-Plaintiff's Motion to Transfer Venue, Counterclaim-Plaintiff repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth herein.

52.     Freeplay's false, misleading, and deceptive statements and representations constitute unfair and deceptive business practices under the laws of various states, including § 349 of the N.Y. General Business Law.

53.     Freeplay's false, misleading, and deceptive statements and representations that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," are deceptive and materially misleading.

54.     Subject to and without waiving  Counterclaim-Plaintiff's Motion to Transfer Venue, Freeplay's false, misleading, and deceptive statements and

representations of fact are directed toward consumers, and have resulted in consumer injury and harm to the public interest in New York, Calfiornia, Tennesee and nationwide.

55.     Subject to and without waiving  Counterclaim-Plaintiff's Motion to Transfer Venue, the transactions by which such harm was caused occurred in New York. These transactions include, among other things, the license and download transactions that took place directly on Freeplay's website, which, upon information and belief, is maintained and operated from Freeplay's place of business in New York.

56.     Freeplay's conduct has caused, and will continue to cause, irreparable injury to Gibson, including injury to its business, reputation, goodwill and viewship, for which there is no adequate remedy at law.  Gibson is entitled to an injunction restraining Freeplay, its agents, employees, representatives and all persons acting in concert with it form engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

57.     By reason of Freeplay's conduct, Gibson has suffered injury in fact in an amount to be proven at trial.

58.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Gibson is thus entitled to recover treble damages and reasonable attorney fees.

**COUNT III**
**(VIOLATION OF N.Y. GEN. BUS. LAW § 350 et seq.)**

59.     Subject to and without waiving  Counterclaim-Plaintiff's Motion to Transfer Venue, Counterclaim-Plaintiff repeats and realleges the allegations in paragraphs 1 through 58 as if fully set forth herein.

60.     Subject to and without waiving  Counterclaim-Plaintiff's Motion to
Transfer Venue, Freeplay has made, published, disseminated, and circulated false,
deceptive, and misleading statements, representations, and advertisements that constitute
false advertising under the laws of various states, including N.Y. Gen. Bus. Law §§ 350
*et seq.*

61.     Freeplay's false, misleading, and deceptive representations and
advertisements that its music is "free," without adequate disclosure of the conditions and
limitations under which its music is purportedly not "free," are deceptive and materially
misleading.

62.     Subject to and without waiving  Counterclaim-Plaintiff's Motion to
Transfer Venue, Freeplay's false, misleading, and deceptive representations and
advertisments are directed toward consumers, and have resulted in consumer injury and
harm to the public interest in New York, Tennesee, California and nationwide.

63.     Subject to and without waiving  Counterclaim-Plaintiff's Motion to
Transfer Venue, the transactions by which such harm was caused occurred in New York.
These transactions include, among other things, the license and download transactions
that took place directly on Freeplay's website, which, upon information and belief, is
maintained and operated from Freeplay's place of business in New York.

64.     By reason of Freeplay's conduct, Counterclaim-Plaintiff has suffered
injury in fact in an amount to be proven at trial.

65.     Freeplay's conduct has caused, and will continue to cause, irreparable
injury to Gibson, including injury to its business, reputation, goodwill and viewship, for
which there is no adequate remedy at law.  Gibson is entitled to an injunction restraining

Freeplay, its agents, employees, representatives and all persons acting in concert with it form engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

66.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith. Gibson is thus entitled to recover treble damages and reasonable attorney fees.

**PRAYER FOR RELIEF**

WHEREFORE, Gibson respectfully requests judgment against Freeplay as follows:

1.     For injunctive relief prohibiting Freeplay, its agents, or anyone working for, in concert with or on behalf of Freeplay from publishing, disseminating and/or promoting: (a) any advertisements or materials, including on Freeplay's website, claiming that any of Freeplay's music is "free," without disclosing all applicable conditions and limitations on such use, including all such conditions or limitations set forth in the Terms of Use on Freeplay's website, clearly and conspicuously, and in immediate proximity to all instances in which Freeplay claims such music is "free"; (b) all other false, misleading and deceptive statements, representations, and advertisements described in the Counterclaims; and (c) all other false, misleading and deceptive statements, representations, and advertisements as determined at trial or other proceeding in this actions.

2.     For an Order directing Freeplay to account for and pay to Counterclaim-Plaintiff all profits derived by Freeplay from the acts complained of herein.

3.      That Gibson be awarded damages sustained as a result of Freeplay's wrongful conduct.

4.      That the foregoing damages and profits be trebled and awarded to Gibson as a result of Freeplay's willful, intentional and deliberate acts.

5.      That Gibson recover its costs and reasonable attorneys' fees.

6.      That Gibson be granted prejudgment and post judgment interest.

7.      That Gibson be granted such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counterclaim Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted, this 21 day of June 2016.


BATES & BATES, LLC


 /s/  Andrea Bates
ANDREA E. BATES
*PRO HAC VICE*
KURT W. SCHUETTINGER
*PRO HAC VICE*
1890 Marietta Boulevard
Atlanta, Georgia 30318
(404) 228-7439
Attorneys for DEFENDANT
GIBSON BRANDS, INC.

## AFFIRMATION OF SERVICE

The undersigned affirms that on June 21, 2016, she filed the foregoing Answer to Complaint and with Counterclaims electronically via ECF.

The undersigned further affirms that on the same date, she served the foregoing documents upon all counsel of record by way of electronic filing.

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and correct.

**Dated**:        June 21, 2016                    */s/ Andrea Bates*
               Atlanta, GA                       Andrea E. Bates, Esq.